■ In the Matter of the Estate of JAMES J. WALKER, Deceased. MARY A. W. NARITA et al., Appellants; RICHARD H. BERNSTEIN, Individually and on Behalf of WARSHAW, BURSTEIN COHEN SCHLESINGER & KUH, Respondent. — Order, Surrogate's Court, New York County (Marie Lambert, S.), entered on August 24, 1982, affirmed for the reasons stated by Lambert, S., without costs and without disbursements. Concur — Silverman, Bloom, Fein and Alexander, JJ.

Kupferman, J. P., dissents in a memorandum as follows: The petitioners-appellants are the adopted children of the late James J. Walker, one-time Mayor of New York City, who died in 1946. The petitioner Mary Ann Walker, was adopted in 1936 and petitioner, James J. Walker, 2d, was adopted in 1937. The respective decrees of adoption were made and entered in Cook County, Illinois. The last will and testament of Mayor Walker was admitted to probate in the Surrogate's Court, New York County. Pursuant thereto, Sidney Harris, Esq., Walker's lawyer, was appointed the guardian of the property of the petitioners who, at the time of Walker's death, were minors. The will provision set forth that Harris' successor would be his law partner, Charles L. Sylvester,

Esq. The law firm of Warshaw Burstein Cohen Schlesinger & Kuh is successor in interest of the law firm of Sylvester and Harris. The petitioners allege that at the time of the death of Mayor Walker, Harris possessed their adoption decrees which contained the full name of the natural mother of each of them. Further, that the testamentary guardian did not deliver the adoption decrees to them at the time they attained their majority. In pertinent part the will provided: "THIRD: I give, devise and bequeath to my beloved children, JAMES J. WALKER 2d and MARY ANN WALKER, any and all my personal property, including furnishings, articles of personal attire and memorabilia of every kind, nature and description * * * SIXTH: All the rest, residue and remainder of my properties, I hereby give, devise and bequeath to my children, JAMES J. WALKER 2d and MARY ANN WALKER, or the survivors of them, share and share alike." The petitioners contend that these adoption decrees were property that passed to them under the foregoing clauses. The Surrogate, in a thoughtful opinion, dismissed the petition "without prejudice to any rights petitioners may have to proceed in the courts of Illinois as they deem appropriate." The Surrogate declined "to rule that the sought-after adoption decrees are mere personalty transferable by will." This was on the basis of the public policy to keep confidential the contents of adoption records (see Domestic Relations Law, § 114)* and a further conclusion that the Illinois law was similar in approach to that of New York. The adoptions having occurred in Illinois, the New York approach is not relevant on the question before us. Furthermore, it is not clear that Illinois would refuse to make the records available. An expert on the law of Illinois pointed out that it was not until subsequent to the date of adoption that birth records in Cook County (Chicago) have been sealed. He cited *Matter of Roger B* (85 Ill App 3d 1064, affd 84 Ill 2d 323) on the matter and note 7 (85 Ill App 3d, at p 1071 [dissenting opn]) on the history of the Illinois law. In the view that I take of this proceeding, all of the foregoing is of interest but not relevant. When the petitioners achieved their majority, Mr. Harris was *functus officio*. He was succeeded by Charles L. Sylvester, deceased at the time of the argument of this appeal, but who, similarly, had no standing. If they, who were named in the will, had no rightful position, then the successor law firm and its members are indeed interlopers. (Cf. *Matter of Weber v Stony Brook Hosp.*, 60 NY2d 208.) The estate papers should have been turned over to the petitioners and, with their present request, the adoption papers should now be turned over.

---

* Pursuant to chapter 898 of the Laws of 1983 (approved Aug. 8, 1983), the New York State Health Department is now maintaining an adoption registry through which adopted children over the age of 21, in compliance therewith, may obtain the identifying information about their natural parents. In the process, consent of adoptive parents is "dispensed with because of death". Reference to the registry is in the *New York Times* (Dec. 11, 1983, § 1, p 92, cols 1-2).